UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE:

THOMAS S. WELSH III,                       Case No. 09-76202-wsd
                                                    Chapter 7
                                                    Hon. Walter Shapero

             Debtor.
_____/

FIRST STATE BANK OF EAST DETROIT and
MARK H. SHAPIRO, CHAPTER 7 TRUSTEE

             Plaintiffs,

v.                                                          Adv. Pro. No. 10-04795

THOMAS S. WELSH III, an individual,
WELSH INDUSTRIAL PARK, LLC, a
Michigan limited liability company,
WELSH ENTERPRISE, LLC, a Michigan
limited liability company, SAF-T RV
STORAGE, LLC, a Michigan limited
liability company, RICHMOND
INDUSTRIAL GROUP, a/k/a RICHMOND
INDUSTRIAL GROUP RIG, a Michigan
partnership, WOODLAND WATERS, LLC,
a Michigan limited liability company, and
PAMELA S. WELSH, an individual,

             Defendants.
_____/

**OPINION IN CONNECTION WITH DEFENDANTS' MOTION TO DISMISS**

       In this adversary proceeding, Plaintiffs seek a determination that substantive consolidation of Defendants' assets and liabilities is appropriate under 11 U.S.C. § 105; that specified prepetition debt owed by Debtor is non-dischargeable via 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), and (a)(6); that Debtor is not entitled to a discharge pursuant to

11 U.S.C. § 727(a)(2)-(5); that Plaintiffs can avoid an alleged fraudulent transfer by means of 11 U.S.C. § 548(a) and Michigan's version of the Uniform Fraudulent Transfer Act; and that Plaintiffs are entitled to damages based upon an "unjust enrichment" claim. Defendants filed the present Motion to Dismiss on various bases. For the reasons set forth, the Court denies Defendants' Motion to Dismiss (except for the challenge to the pleading of the "unjust enrichment" action of Count VIII, which the Court will defer its ruling pending the outcome of the substantive consolidation action of Count VII).

## I. Jurisdiction

The Court has jurisdiction over this action as it is a core proceeding identified in 28 U.S.C. § 157(b)(2)(H)-(J) and is in accord with 28 U.S.C. §§ 157(a) and 1334(b).

## II. General Facts and Procedural Background

On November 24, 2009, Thomas S. Welsh III ("Debtor") filed for chapter 7 bankruptcy. At the time of his petition filing, Debtor was 50% owner of a number of professional organizations: Welsh Industrial Park, Limited Liability Company (LLC); Welsh Enterprise, LLC; Saf-T RV Storage, LLC; and a partnership identified as Richmond Industrial Group. At the same time, he held 35% ownership of Woodland Waters, LLC. Pamela S. Welsh ("Debtor's Wife") complemented her husband's ownership interests by reportedly holding title to half of Saf-T RV Storage and Welsh Enterprise and 61% of Woodland Waters. Other kin to Debtor are also apparently owners to varying degrees of the previously identified business entities.[1]

---

[1] Chapter 7 Trustee Mark H. Shapiro (hereinafter referred to as "Trustee") asserts in his Amended Adversary Complaint that Debtor's four children each have a 1% ownership interest in Woodland Waters and may together own half of Welsh Industrial Park. Trustee also alleges in his Amended Complaint that Debtor's sister owns the other half of Richmond Industrial Group.

On February 15, 2010, First State Bank of East Detroit ("Bank") claimed in its Objections to Debtor's Exemptions and Brief in Support that Debtor filed his bankruptcy with unlawful intentions. On March 5, 2010, Bank followed-up on its preceding accusations by filing this adversary proceeding on a multitude of bases essentially premised on Debtor's alleged fraudulent intent and devious conduct. In addition, Bank seeks substantive consolidation in order to bring into the bankruptcy the assets and liabilities of Debtor's Wife and Debtor's aforementioned business associations ("Business Defendants"). (Debtor, Debtor's Wife, and Business Defendants are hereinafter identified collectively as "Defendants.")

On July 15, 2010, Defendants responded by filing their Motion to Dismiss. The Chapter 7 Trustee ("Trustee") subsequently intervened and amended Bank's initially filed complaint. (Bank and Trustee are hereinafter referred to as "Plaintiffs.") In a preliminary opinion issued on August 30, 2010, the Court gave the Trustee an opportunity to further amend the previously filed complaint and the amended complaint before ruling on the dismissal motion. He did so by a further amended complaint filed on October 6, 2010. What follows is the Court's ruling in light of that further amended complaint (hereinafter referred to as the "Complaint").

### III. Applicable law / Discussion

Defendants asserted four bases for dismissal: (A) the Bank lacks standing to pursue an alter ego claim; (B) Plaintiffs (Bank and the Trustee) fail to satisfy Fed. R. Civ. P. 12(b)(6) in regard to the claim for substantive consolidation of Defendants' assets and liabilities; (C) Bank lacks standing to bring an "unjust enrichment" claim that is allegedly a disguised fraudulent transfer action; and (D) the allegations set forth in the Complaint

do not meet "the criteria" necessary to substantively consolidate non-debtor individuals and entities.

      (A)    <u>The Bank lacks standing to pursue its alter ego claim in Count VII.</u>

Defendants move for dismissal of Count VII of the Complaint on the basis that Bank lacks standing "to pursue a claim for alter ego." The Court construes Defendants' Motion to Dismiss in regard to standing as a Fed. R. Civ. P. 12(b)(6) motion, which is made applicable to bankruptcy proceedings via Fed. R. Bankr. P. 7012. <u>See</u> Daniel R. Coquillette et al., <u>Moore's Federal Practice - Civil</u> § 12.34 (2010) (citations omitted) ("Dismissal under Rule 12(b)(6) is proper if . . . the plaintiff fails properly to allege standing to sue."). Rule 12(b)(6) requires a showing that the allegations pled in a complaint fail to state a claim upon which relief can be granted, notwithstanding the assumption that the allegations are true and the benefit of any doubt going to the plaintiff. <u>See</u> <u>Agee v. Wells Fargo Bank</u>, 2010 U.S. Dist. Lexis 48815, at *1-2 (2010) (citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)); <u>see also</u> <u>Benzon v. Morgan Stanley Distribs.</u>, 420 F.3d 598, 605 (6th Cir. 2005) (citations omitted).

Contrary to Defendants' position, Plaintiffs aver proper standing in their Complaint. Plaintiffs appropriately clarify that they are seeking a substantive consolidation claim and not an alter ego claim as Defendants allege. The court in <u>Simon v. ASIMCO Technologies, Inc.</u> (<u>In re American Camshaft Specialties, Inc.</u>), 410 B.R. 765, 785 (Bankr. E.D. Mich. 2009) (Shefferly, C.J.) distinguishes the two causes of action: "[A] cause of action for substantive consolidation is not the same as . . . a cause of action to determine whether, under state corporate law, there is a basis to find that two

or more corporations are alter egos of one another." Plaintiffs are not bringing an alter ego claim, so standing in respect to such is irrelevant.

Regardless, Plaintiffs (or certainly the Trustee) have standing to bring a substantive consolidation action by virtue of Trustee's intervention.[2] <u>Simon v. New Center Hospital</u> (<u>In re New Center Hospital</u>), 187 B.R. 560 (E.D. Mich. 1995). In the case of <u>New Center Hospital</u>, the court first noted that the moving party by itself lacked standing to bring a substantive consolidation claim. 187 B.R. at 566. However, once the trustee joined the action for substantive consolidation, that court saw that standing was no longer a legitimate concern. <u>Id.</u>

Hence, while it is understandable that Defendants initially sought dismissal of Count VII on the basis that Bank, then the only plaintiff, lacked standing after Defendants filed their Motion to Dismiss, the Trustee later intervened and the issue became moot.

(B) <u>Plaintiffs fail to state a claim for substantive consolidation upon which relief can be granted.</u>

Defendants generally argue that Plaintiffs fail "to state a claim upon which relief can be granted." Their Brief supporting this claim is specifically directed only toward the substantive consolidation claim, which specifically appears in Count VII. Regardless, the dismissal motion is to be here tested against the requirements of Rule 12(b)(6).

Substantive consolidation is an unsettled area of bankruptcy law. It is commonly defined as an equitable remedy whereby the assets and liabilities of debtor and non-

---

[2] <u>New Center Hospital</u> clearly sets forth that an intervening trustee has standing to bring a substantive consolidation claim. Without careful scrutiny and study, however, <u>New Center Hospital</u> could be read to mean that a substantive consolidation claim is reliant upon a finding of an alter ego under state law. The <u>American Camshaft</u> court recognized the problematic articulation of the <u>New Center Hospital</u> ruling in this regard, and, consequently, sought to curtail any subsequent confusion that may result. <u>See</u> <u>American Camshaft</u>, 410 B.R.at 783-84. <u>American Camshaft</u> sets straight that <u>New Center Hospital</u> is in accord with the rule that a finding of an alter ego via state law is not necessary to achieve substantive consolidation under § 105(a). <u>See</u> 410 B.R.at 783-85.

debtor entities alike are combined to satisfy creditors' claims. Alan N. Resnick & Henry J. Somner, 2 <u>Collier Bankruptcy Practice Guide</u> P 18.08 (2010) (citation omitted); <u>American Camshaft</u>, 410 B.R. at 779. In essence, substantive consolidation serves as a judicial means for breaking through otherwise lawful barriers that hinder the equitable treatment of creditors. In spite of its generally understood definition and purpose, courts struggle to pinpoint its legal construction. No section of the Bankruptcy Code expressly authorizes the substantive consolidation of defendants' assets and liabilities. <u>See American Camshaft</u>, 410 B.R. at 779 and 785. Latent authority in the Bankruptcy Code permitting courts to order substantive consolidation is disputed. <u>Compare American Camshaft</u>, 410 B.R. at 786 (courts utilize § 105(a) as the grounds for substantive consolidation) <u>with</u> <u>In re Cyberco Holdings, Inc.</u>, 431 B.R. 404, 430-31 (2010) (11 U.S.C. §§ 542 and 502(j) provide the basis for substantive consolidation). The time of its judicial beginnings is questioned. <u>See</u> <u>NM Holdings</u>, 407 B.R. at 273-74 (tracing the roots of substantive consolidation as far back as 1898) (citations omitted); <u>see also</u> <u>Cyberco Holdings</u>, 431 B.R. at 411, 417, 424, and 431 (comparing varying views as to the origins of substantive consolidation). Neither the Supreme Court nor the Sixth Circuit has articulated standards for which to judge it and as implied in <u>American Camshaft</u>, substantive consolidation may be a topic that is ripe for Sixth Circuit scrutiny. <u>American Camshaft</u>, 410 B.R. at 785 and 787.

Absent a controlling decision, this Court will rely upon the well-reasoned ruling in <u>American Camshaft</u>. That court faced a comparable fact-pattern, which also had an air of alleged fraud. <u>See</u> <u>id.</u> at 770. In that adversary proceeding, the trustee, among other things, sought to substantively consolidate four non-debtor corporations with four

corporate debtors. The non-debtors moved to dismiss under Rule 12(b)(6), arguing that the trustee did not plead a proper substantive consolidation action. Id. at 777.

The American Camshaft court methodically analyzed black letter and standing case law on substantive consolidation and formulated a logical test. Ultimately, the American Camshaft court determined that § 105(a) is the proper authority for a substantive consolidation claim. See id. at 786. § 105(a) empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (2010). That court noted the Sixth Circuit's view that § 105(a) can only be utilized to implement powers expressed in the Bankruptcy Code and recognized that nowhere in the Code is substantive consolidation expressed. American Camshaft, 410 B.R. at 785 (citing Childress v. Middleton Arms, L.P. (In re Middleton Arms, Ltd. Partnership), 934 F.2d 723, 725 (6th Cir. 1991) (citation omitted)). Nonetheless, the American Camshaft court relied upon the large volume of case law supporting a position that § 105(a) is the proper statutory basis for substantive consolidation, thereby setting further precedent by joining with those other courts on that point. Id. at 785-86.

From the array of tests, the American Camshaft court found the Third Circuit's test articulated in In re Owens Corning, 419 F.3d 195 (3rd Cir. 2005) to be the most compelling; attributing its respect for that ruling to the thorough analysis and weighing of competing principles[3] conducted by the Third Circuit. 410 B.R. at 787. Following that

---

[3] The Owens Corning court expressed its resolve for judiciaries to generally respect entity separateness unless compelling circumstances exist to act otherwise. 419 F.3d at 211. The Third Circuit decreed that substantive consolidation of entities should not be utilized offensively, and is only available as a defensive remedy to address an incurred harm. Id. The court also warned that the mere benefit to the administration of the estate is by no means a basis by itself to warrant substantive consolidation. Id. Overall, Owens Corning pronounced that substantive consolidation is a rare remedy that should be used only as a last resort given the magnitude of its implications on all interested parties. Id.

- 7 -
10-04795-wsd    Doc 65    Filed 01/05/11    Entered 01/05/11 12:08:26    Page 7 of 16

standard, the American Camshaft court concluded that substantive consolidation of a debtor with a non-debtor entity is only appropriate where either:

> (i) the debtor and the non-debtor entity in their pre-petition conduct disregarded the separateness of their respective entities so significantly as to lead their creditors to treat them as one legal entity; or
>
> (ii) that post-petition, the assets and liabilities of the debtor and the non-debtor entity sought to be consolidated are so hopelessly scrambled and commingled that it is impossible to separate them and tell them apart thereby resulting in harm to all creditors.

410 B.R. at 787.

For purposes of the Rule 12(b)(6) motion to dismiss in American Camshaft, that court properly scrutinized the complaint to determine if it contained a ***plausible***[4] claim under the aforementioned test. Id. at 791. First, the court looked to the pre-petition conduct of the debtors and non-debtors and noted:

> [T]he allegations in the complaint . . . focus on the transacting of business *inter se* among the [d]ebtors and the non-debtors. Specifically, the complaint alleges that they loaned each other money, transferred assets to each other and exchanged employees, and that these transactions among them were either not documented or lacked adequate consideration. . . . [b]ut the presence of such transactions, even when coupled with the conclusory assertion that the "goal" was to do what was best for the ASIMCO family of companies, is insufficient to prove that the [d]ebtors and non-debtors engaged in pre-petition conduct that disregarded the separateness of their respective entities so significantly ***as to lead their creditors to treat them as one legal entity***.

Id. at 789-90 (emphasis added). The court noted that the complaint did not contain or describe allegations of an inability to distinguish financial accounts and records; allegations of misleading creditors as to the separateness of the entities; or allegations that creditors were in fact mislead. Id. at 789. As a result, that court concluded that the

---

[4] "Plausibility" is a fairly low threshold, given the common definition of plausible as being something superficially reasonable or worthy of belief. See, Webster's Third New International Dictionary 1736 (1986) (defining "plausibility" as "the quality or state of being plausible" and defining "plausible" as "superficially worthy of belief").

complaint did not sufficiently plead the pre-petition conduct portion of the substantive consolidation test. Id. at 790.

The court then turned to the post-petition portion of the standard, summarizing the allegations pertaining to the post-petition portion of the complaint as follows:

> The crux of the [t]rustee's allegations regarding the books, records and financial statements of the [d]ebtors and non-debtors is that they were, for some purposes at least, kept in a combined or consolidated manner, and that such books, records and financial information were presented, at least for some purposes, in a collective way. But that is a far cry from alleging that because of the fact that the books, records and financial statements were kept in a combined or consolidated fashion, ***the assets and liabilities*** of the [d]ebtors and non-debtors ***are hopelessly scrambled and commingled so that it is now impossible to tell them apart***.

Id. at 790-91 (emphasis added). Given that analysis of the complaint, that court concluded the trustee also failed to satisfy the post-petition portion of the substantive consolidation test. Id. at 791.

In this Court's view, the facts of the present case are distinguishable from those in American Camshaft, and as such, require a different conclusion.

In American Camshaft, the trustee's complaint was lengthy. 410 B.R. at 791. The complaint averred in relevant part that the defendants combined their financial records and presented them in a consolidated fashion. It also alleged that the defendants shared their resources to the extent that the identification of the liabilities that they owed to each other was impossible. Id. at 790. Notwithstanding its allegations and length, that court identified the shortcomings of the complaint in the course of addressing the "hopeless scrambling and commingling" test for substantive consolidation, thusly:

- The complaint does not allege "that because of the fact that the books, records and financial statements were kept in a combined or consolidated fashion, the assets and liabilities of the [d]ebtors and non-debtors are hopelessly scrambled and commingled . . . ."

- The complaint does not allege "that because the [t]rustee cannot determine how much the [d]ebtors and non-debtors may owe to each other that he is unable to determine how much the [d]ebtors owe to their creditors other than the non-debtors."
- The complaint does not allege "that there is any difficulty in determining what assets the [d]ebtors own or what liabilities they may owe, except for the allegation that the [t]rustee cannot determine how much the [d]ebtors and non-debtors owe to one another."
- "The complaint does not allege that the [t]rustee has been unable to administer this case."
- The complaint does not allege that the trustee "has somehow been stymied in his ability to determine the assets and liabilities of the [d]ebtors because of any absence of loan documents with the non-debtor defendants or the absence of contracts with the non-debtor defendants regarding their exchange of employees."

Id. at 790-91.

It would appear that the Plaintiffs in this case utilized the above articulated shortcomings in American Camshaft as a guide. In this case, while utilizing conclusions and formulaic recitations (which by themselves might be insufficient to satisfy the Twombly and Iqbal plausibility standards), the Plaintiffs sufficiently support their conclusions and formulaic recitations with alleged facts which sufficiently show plausibility of their substantive consolidation theory.

The Complaint alleges an overall inability of Plaintiffs to identify Debtor's assets and liabilities. Plaintiffs report they are unable to ascertain information from Debtor, via means such as his bankruptcy filings, the First Meeting of Creditors, and the Rule 2004 Examination, in order to remedy the alleged hopeless scrambling and commingling of Debtor's assets and liabilities with that of the other Defendants'. Plaintiffs allege that the information provided by Debtor contains errors, omissions, and misrepresentations. Support for their conclusion derives from averments advanced in the Complaint, such as the failure of Debtor to list income earned or received in his Schedules and to provide

documentary support such as a detailed statement supporting Line 7 of Schedule I. The claimed omission of specified assets such as a "John Deere Skid Loader with Bucket Forks Model No. 260, Serial Number 260531" and an "indebtedness of more than $1,000,000.00" owed for the acquisition of the Woodland Waters property further backs Plaintiffs' allegation. Plaintiffs also claim that information provided by Debtor in his bankruptcy directly conflicts to a substantial degree with that which he provided pre-petition to Bank in order to procure loans. Supposedly, Debtor cannot explain or justify that disparity, nor can he even simply account for the figures he is utilizing in his bankruptcy, such as the $33,922.00 in expenses supplied by Debtor in Line 16 of his Schedule J. Per the Complaint, Plaintiffs sought clarification regarding Debtor's assets and liabilities from Debtor during his testimony given at the First Meeting of Creditors. Plaintiffs advise that they received insight into why they cannot ascertain Debtor's true financial status at the First Meeting of Creditors. Per the Complaint, Debtor admitted at his "341 Hearing" that his personal and business interests are intermingled with that of his family's and that they are not concerned with who owns what, which Plaintiffs explain is the basis for the blurring of Debtor's assets and liabilities.

Given their apparent inability to "unscramble" the assets and liabilities of Debtor from that of the other Defendants, Plaintiffs are thus looking to substantively consolidate the assets and liabilities of the remaining Defendants with those of the Debtor. By way of illustrating the need for substantive consolidation, Plaintiffs rely upon the alleged fraudulent transference of the Woodland Waters property and the impropriety of its present ownership status. As previously described in this Opinion, Debtor obtained an approximately $1.9 million loan from Bank in 2005. Debtor sought and received the loan

- 11 -
10-04795-wsd    Doc 65    Filed 01/05/11    Entered 01/05/11 12:08:26    Page 11 of 16

on his own behalf as an unincorporated business entity in order to fulfill the land contract by purchasing the Woodland Waters property. Debtor signed the promissory note, and, then for reasons unexplained, Debtor's Wife joined Debtor in signing the mortgage. Both the note and mortgage indicated Debtor owned the property. Per the recorded deed of the Woodland Waters property, however, Debtor did not own the property. Instead, the apparent rightful owner of the property since 2003 was his and his wife's company, Woodland Waters, for which they are 96% owners. Plaintiffs aver that Woodland Waters never received a loan to purchase the property, and appear puzzled as to how Woodland Waters acquired ownership. Further adding to the confusion, another company of Debtor and his wife, Welsh Enterprises, manages and operates the usage of the Woodland Waters property. Notwithstanding all of the aforementioned, Debtor denies that the Woodland Waters property is his asset, and disclaims the $1.9 million liability for the loan on the property for which he signed. In trying to straighten out the circumstances, the Complaint alleges that Plaintiffs are unable to utilize any documentation to clarify the ownership and debt related to the Woodland Waters property as Defendants did not draft or execute any paperwork memorializing the transfer of the property. Ultimately, Plaintiffs report that they are in a quandary as to how to proceed with the ownership status and liability for the purchase of the property.

Plaintiffs also plead that they are unable to proceed with the administration of "hundreds of thousands of dollars in personal property (equipment and vehicles)" that may be owned by Debtor but at the very least is owned by one or more of Defendants. Plaintiffs allege that Debtor pronounced his ownership of the "hundreds of thousands of dollars" of assets in financial statements previously provided by him to third parties. In-

line with the Plaintiffs' allegation is the claim that Debtor and Debtor's Wife's tax returns prior to July 19, 2005 indicate that he, along with his wife, owned the personal property. The Complaint goes on to provide an extensive list of the assets at issue.

In this bankruptcy, however, Debtor is supposedly now disclaiming that he and his wife own the assets. He is now asserting that the assets are owned by Saf-T RV. At the same time, though, neither he nor Saf-T RV can yet substantiate the assertion. In reply to Plaintiffs' subpoena, Saf-T RV was either unwilling or unable to provide any documentation regarding ownership of the property. Saf-T RV allegedly does not list the personal property on their tax schedules either.

Despite his position that Saf-T RV is the sole owner of the chattel(s) in question, Debtor asserts that all of the Business Defendants are using the chattel. Plaintiffs learned via a subpoena served upon Hastings Mutual Insurance Company that Welsh Enterprise and not Debtor or Saf-T RV is footing the bill for the insurance on the chattel. Just like with Saf-T RV, however, neither Welsh Enterprise nor any the remaining Company Defendants claim to have *any* documentation regarding the ownership of *any* personal property. In the end, none of Defendants list the personal property at issue on their personal property tax schedules, and Plaintiffs are left in a state of uncertainty as to how to address those assets, or to whom, and/or in what proportion, they belong.

In addition to noting her involvement in the affair regarding the Woodland Waters property and the aforementioned personal property quandary, Plaintiffs note an additional circumstance when the assets and liabilities of Debtor's Wife "scrambled" and commingled with that of Debtor and the other Defendants. Plaintiffs advise that one month after Bank served Debtor with a lawsuit in 2009, Debtor's Wife placed into her

individual checking account an approximately $36,000 joint tax refund issued by the IRS to her and Debtor.  Per the Complaint, Debtor's Wife later returned $20,000 of the refund to their joint account, and subsequently paid the $20,000 to an accounting firm on behalf of all Defendants, Thomas S. Welsh IV and Welsh Family Investment, LLC.

Given the foregoing, and, as required, giving the Plaintiff's the benefit of the doubt (though there is little doubt), it cannot be reasonably denied that the assertions in the Complaint and the substance of the foregoing at the very least present a "plausible" claim for substantive consolidation – and that is all that is at issue here in this 12(b)(6) dismissal motion. Whether Plaintiffs will actually achieve substantive consolidation as the result of further and required hearings is another question, and is one appropriately left for another day.  To be sure, continuing the proceeding action will continue to be costly to all parties and indeed the allegations in the Complaint detail the Plaintiff's previous efforts to obtain facts and information necessary to unscramble what they claim is unscrambleable.  Those efforts indicate the bringing of this proceeding is more or less one of last resort and not undertaken casually or without substantial previous efforts to deal with the situation.  Those efforts have been somewhat understandably, at least initially, met with some reluctance on the part of the objects of the consolidation.  But trustees in bankruptcy have obligations (and creditors have certain rights) that are being properly pursued thus far in this proceeding.

In sum then, the substantive consolidation issue has been sufficiently framed and asserted, and thus, the interests of the creditors involved at the very least require that the issue be fully aired and pursued to whatever conclusion the facts lead.  Accordingly, the motion to dismiss is denied.

(C) <u>Bank lacks standing to bring an "unjust enrichment" claim that is allegedly a disguised fraudulent transfer action in Count VIII.</u>

Many of the underlying facts involved in the unjust enrichment claim are referred to in the previous sections. Defendants maintain that Count VIII, which advances an allegation of "unjust enrichment" in regard to the transfer of real property located at 79720 Kidder Road in Bruce Township (identified in the Complaint as the "Woodland Waters Property") to Woodland Waters, should be dismissed. They aver that Bank's "unjust enrichment" claim is simply a disguised fraudulent transfer action that only a trustee has standing to bring. The intervention of the Trustee disposes of that argument.

Whether it is a disguised fraudulent conveyance claim or is an independent one that stands on its own or something else, given the foregoing conclusion on the substantive consolidation claim, the Court will not be deciding now whether the unjust enrichment claim should be dismissed. In the Court's view, if the Plaintiffs achieve the substantive consolidation they seek with regard to some or all of the entities involved, the unjust enrichment claim will thereby become moot, irrelevant, or more narrowly focused. If for no other reason, that is the case since Woodland Waters, the entity which is claimed to have been unjustly enriched by a fraudulent conveyance, is a potential substantively consolidated defendant. Accordingly, any dismissal of the unjust enrichment claim should and shall await the substantive consolidation decision.

(D) <u>Plaintiffs fail to satisfy "the criteria to substantively consolidate non-debtor individuals and entities into the bankruptcy estate."</u>

As noted, what is here before the Court is Defendants' Motion to Dismiss under Rule 12(b)(6). Whether Plaintiffs can satisfy the substantive criteria for substantive consolidation will be determined at a further hearing on another day.

### IV. Conclusion

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss (except for the challenge to the "unjust enrichment" claim in Count VIII, which the Court will defer a ruling pending the outcome of the substantive consolidation action). An order to that effect is being entered concurrently.

.

**Signed on January 05, 2011**

                                            **/s/ Walter Shapero**
                                   **Walter Shapero**
                                   **United States Bankruptcy Judge**